**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Case No.: 1:20-MJ-02119-DAR-1 |
| Plaintiff, | : | |
| | : | **MAG. JUDGE DAVID A. RUIZ** |
| vs. | : | |
| **BRANDON MICHAEL ALTHOF LONG**, | : | |
| Defendant. | : | |

**DEFENDANT BRANDON MICHAEL ALTHOF LONG'S
BRIEF IN SUPPORT OF BOND**

**NOW COMES** the Defendant, Brandon Michael Althof Long, by and through his undersigned counsel, and respectfully opposes the Government's request for detention (Doc. 6), as there are conditions and combinations of conditions of bond that will reasonably assure this Defendant's appearance; and, this Defendant's risk of danger to the community is low and not substantial both in terms of probability and in occurrence. The reasons which more fully support this Brief in Opposition are as follows:

**I.  FACTS AND CIRCUMSTANCES REGARDING BRANDON MICHAEL ALTHOF LONG**.

Mr. Althof Long is 23 years of age, and has been a life-long resident of Erie County, Pennsylvania.  Mr. Long's immediately family, including his mother, his father, and his siblings, all reside in Erie, Pennsylvania.  Mr. Long, at 23 years of age, owns his home, in Erie, Pennsylvania.

Mr. Althof Long has no criminal record.  He is a 2015 graduate of the Strong Vincent High School, in Erie, Pennsylvania.  During high school, Mr. Althof Long

participated in a work-study program where he was trained in CPR, patient's vitals, basic medical triage, and worked as a nursing aide in both the emergency room, and in the cardiac care program, in two (2) Erie, Pennsylvania hospitals.

Mr. Long is now self-employed, buying and selling local Erie County, Pennsylvania residential real estate, for rehabilitation and rental or sale. At 23 years of age, Mr. Althof Long's Blue Chip Home Real Estate business, currently owns four (4) residential rental/rehab properties in Erie County, Pennsylvania.[1]

### 1. The Probable Cause Affidavit.

Mr. Long cannot be considered a danger to the community, or a flight risk. According to the Probable Cause Affidavit of Special Agent Jennifer Kiesell (SA Kiesell; "PC Affidavit") Mr. Althof Long's initial law enforcement encounter occurred in Cleveland, Ohio, at the one-way southbound East 8th Street alley, near Huron Road. This initial encounter occurred at approximately 11:55 p.m., on May 30, 2020, with the Detective Habeeb from the Cleveland Police Intelligence Unit and CPD Commander Connelly. (PC Affidavit, ¶¶13, 14).

Detective Habeeb and Cmdr. Connelly observed Mr. Althof Long walking in the area in which his SUV was parked, in the East 8th Street alley.[2]

The PC Affidavit reports that Mr. Althof Long was "wearing a commercial style filter mask" (PC Affidavit, ¶14), which is exactly what people are directed to do in all public places, sidewalks, streets, buildings and locations, by all Coronavirus Task Force directives, from the federal government, to the Ohio Department of Health, to local

---

[1] This is in addition to Mr. Long's Erie County, Pennsylvania residence, which at 23 years of age, he owns.
[2] This Court can take judicial notice that the East 8th Street one-way alley runs southbound, not northbound as reported in the PC Affidavit at ¶13.

2

governments. The point being this Court should infer nothing nefarious about wearing a commercially available mask, in a Covid-19 pandemic.

Significantly here, upon Mr. Althof Long's initial encounter with CPD Detective Habeeb and Cmdr. Connelly, Mr. Althof Long did not run or attempt to evade, did not drop or dispose of any items or possessions, truthfully acknowledged his identity when asked by Detective Habeeb (PC Affidavit ¶15) and affirmatively identified the observed SUV as his. (PC Affidavit, ¶¶15, 16, 18).

During this initial police encounter, Mr. Althof Long peacefully complied with all police commands by Detective Habeeb and Cmdr. Connelly. While temporarily detained, the PC Affidavit does not indicate that Mr. Long was ever handcuffed. (PC Affidavit, ¶19).

The PC Affidavit goes on to explain that Detective Habeeb conducted a search of Mr. Althof Long's SUV, and recovered the items described in ¶27 of the PC Affidavit. Included in those items were two (2) one pound bottles of Sterno Firestarter Instant Flame Gel; two (2) Glock brand magazines, each loaded with 17 rounds of ammunition along with one (1) Glock .45 pistol; one (1) pocket knife; two (2) iPhones; and, a yellow Stanley brand hammer.[3]

During this initial police encounter, it is abundantly obvious that CP Detective Habeeb from the Cleveland Police Intelligence Unit and Commander Connelly did not view Mr. Althof Long as a danger, because he was not arrested; he was not even handcuffed. Instead, Cleveland Police sent Mr. Althof Long on his way, back to Erie, Pennsylvania, in his SUV.

---

[3] The .45 caliber Glock was unloaded; the two (2) 17 round magazines were loaded with 17 rounds each, for a total of 34 rounds of ammunition. Being self-employed in rehabbing residential houses, no negative inferences should be drawn from an ordinary hammer.

3

Despite having had five (5) days to flee, Mr. Althof Long did not. On Friday, June 5, 2020, when the FBI arrested Mr. Althof Long, he was exactly where he was expected to be, which was at his home, at 6:00 a.m., sleeping. Mr. Long did not flee because he is not a flight risk. Cleveland Police did not arrest Mr. Althof Long, but rather sent him on his way back home to Erie, Pennsylvania, because he was not observed engaging in any overt acts of rioting, vandalism, arson, theft, or civil unrest. Mr. Long presents no danger to his community.

Now however, the government seeks detention of this 23 year old, industrious, and self-employed, crime-free defendant, based on nothing other than the suggestion that Mr. Long is charged with a crime of violence.[4]

## II. LAW AND ARGUMENT.

### A. Pretrial Detention Is Not Warranted.

In construing the application of pretrial detention as set forth in the provisions of the Bail Reform Act of 1984, the Supreme Court made it clear that it was only in extreme situations that an accused's liberty would be restrained prior to trial:

> "In our society liberty is the norm and detention, prior to and without trial is the carefully limited exception, which the Bail Reform Act of 1984 authorizes only after an adversary hearing in which the accused is found to pose such a threat of flight and danger to the community **that no condition for release can dispel**." *United States v. Salerno*, 481 U.S. 739, at 755 (1987). (Emphasis added).

Under 18 U.S.C. §3142(e), a statutory, but rebuttable, presumption exists for the offenses charged in Brandon Michael Althof Long's Criminal Complaint, that no

---

[4] The government suggests that no condition or combination of conditions will reasonably assure the appearance of the Defendant as required; that the Defendant is a danger to persons or his community; that Defendant is charged with a crime of violence; and, that a serious risk exists that the Defendant will obstruct or attempt to obstruct justice, or threaten, injury, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror. The government provides no support of these boiler plate check-box allegations.

4

condition or combination of conditions will reasonably assure the Defendant's appearance at all required court proceedings; or, that the Defendant will pose an unreasonable risk of danger to the community.

This statutory presumption will be rebutted, however, where sufficient facts are presented to show the Defendant's long-time residence in the area and close family ties; and, where the government's evidence does not show **clearly and convincingly** that the Defendant poses a present danger to the community. *United States v. Lopez*, 827 F. Supp. 1107 (D.C.N.J. 1993); *United States v. Arena*, 878 F. Supp. 439 (N.D.N.Y. 1995). Here, if granted release, Mr. Althof Long will reside at his current residence, which at 23 years of age, Mr. Althof Long owns. Mr. Althof Long is not a flight risk, as his entire life is centered around his close family in Erie, Pennsylvania, and his legal Blue Chip Home Real Estate business, which owns four (4) Erie, Pennsylvania residential houses, for rehabilitation, for rent or re-sale.

The United States District Court for the Norther District of Ohio recently addressed the **rebuttable** presumption of detention in *United States v. Anderson*, 2010 U.S. Dist. LEXIS 82302, (ND Ohio, Mag. Judge Baughman) at * 9 – 10 as follows:

> Under 18 U.S.C. § 3142(e), a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community if, as here, there is probable cause to believe that the defendant has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, 21 U.S.C. § 801 et seq. The defendant may rebut that presumption by evidence as to the factors identified in 18 U.S.C. § 3142(g). The factors identified by § 3142(g) are as follows:
>
> (g) **Factors to be considered**. — The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person

5

    and the community, take into account the available information concerning —

    (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

    (2) the weight of the evidence against the person;

    (3) the history and characteristics of the person, including —

      (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

      (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

    (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. (Citations omitted, emphasis in original).

The Court in *United States v. Fatico*, 458 F.Supp. 388 (E.D.N.Y. 1978), *aff'd* 603 F.2d 1053 (2nd Cir. 1979), *cert. denied*, 444 U.S. 1073 (1980), quantified "clear and convincing evidence" as eighty percent (80%) proof. In *United States v. Bell,* 673 F.Supp. 1429 (E.D. Mich. 1979), the Court related the following definition of "clear and convincing":

    "Witnesses to a fact must be found to be credible, and that the facts to which they have testified [are] distinctly remembered and the details thereof narrated exactly in due order, so as to enable the trier of the facts to come to a clear conviction without hesitancy on the truth of the precise facts in issue."

6

In order to establish that no condition of release would reasonably assure the safety to any person or the community, the Court must find the risk of harm to a person or danger to the community to be established by clear and convincing evidence which is substantial **both** in terms of the probability and of its occurrence. *United States v. Phillips*, 732 F.Supp. 255, at 266 (C.D.Mass. 1990); *United States v. Jackson*, 845 F.2d 1262 (5th Cir. 1988). Mag. Judge Baughman addressed this in *United States v Anderson, supra* at * 7 – 8:

> Once it is determined that a defendant qualifies under any of the six conditions of § 3142(f), the Court may order a defendant detained before trial if the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. **Detention may be based on a showing of either dangerousness or risk of flight; proof of both is not required.** With respect to reasonably assuring the appearance of the defendant, the United States bears the burden of proof by a preponderance of the evidence. **With respect to reasonably assuring the safety of any other person and the community, the United States bears the burden of proving its allegations by clear and convincing evidence.** Clear and convincing evidence is something more than a preponderance of the evidence but less than proof beyond a reasonable doubt. **The standard for pretrial detention is "reasonable assurance;"** a court may not order pretrial detention because there is no condition or combination of conditions which would *guarantee* the defendant's appearance or the safety of the community. (citations omitted). (Emphasis added).

The standard for pretrial detention is "reasonable assurance." A court may not order pretrial detention because there is no condition or combination of conditions which would guarantee the Defendant's appearance or the safety of the community. *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985); *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985); *United States v. Orta*, 760 F.2d 887, 890-92 (8th Cir. 1985).

As a general rule, "the weight of the evidence" is the least important standard, under 18 U.S.C. §3142, as the caliber of evidence at a detention hearing need not comply with the Federal Rules of Evidence and liberally incorporates hearsay statements which would be inadmissible at trial. As a result, the initial judicial officer at a detention hearing is not in a position "to make an intelligent evaluation of the weight of the evidence." *United States v. Khashoggi*, 717 F. Supp. 1048, at 1050 (S.D.N.Y. 1989). See also: *United States v. Cardenas*, 784 F.2d 937 (9th Cir. 1986). Here, the Magistrate Judge has heard no evidence, and has not yet weighed the evidence, of Conditions of Bond for Brandon Michael Althof Long.

Here, in the PC Affidavit, the government is cherry picking breadcrumbs of evidence, which are presented to the Court, out of context. These evidence breadcrumbs are to be given the least consideration by the Court.

In this case, the government has the Defendant's entire smart phone contents and extractions (PC Affidavit, ¶29). Defense counsel will not have that phone-dump evidence, until after indictment and discovery. Even so, the greater weight of the PC Affidavit breadcrumb evidence is that Defendant was interested in "riot watching", not inciting riots or participating in riots. (PC Affidavit, ¶¶30(a) and (g)).

Most importantly, is that the PC Affidavit, while accurately portraying the riotous situation in Cleveland, Ohio, is void of any overt act of violence, rioting, looting, arson, or other underlying civil disorder, performed, or committed by Mr. Althof Long. The crimes charged by Complaint require both an overt act and a criminal intent. Interstate commerce, while an essential element, is not an overt act. Here, there is no overt act. The government has no direct or hearsay evidence that Mr. Althof Long committed any illegal activities of riot or civil disobedience, while he was in Cleveland, Ohio. Here, Mr.

8

Althof Long's intent and state of mind is an ultimate issue for the jury, not an inquiry for the Court at detention hearing, as Mr. Althof Long is presumed innocent. So much so the Cleveland Police did not even arrest Mr. Althof Long, but rather sent him home, in his SUV, to Erie, Pennsylvania, from where he did not flee.

  **B.** **Reasonable Conditions Exist To Afford The Defendant Bond Pending Final Resolution Of This Case.**

Here, reasonable conditions exist to afford Defendant Althof Long conditions of bond, pending final resolution of this case. Brandon Michael Althof Long is not a danger to his community, and he is not a flight risk, as he has a stable family and business life; he was not arrested by Cleveland Police. Instead he was sent home to Erie, Pennsylvania and he was arrested, at 6:00 a.m. on Friday, June 5, 2020, exactly where he was expected to be, which was at his home, sound asleep.

  **C.** **COVID-19 Makes Meaningful Attorney-Client Communication Unreasonably Difficult.**

Counsel has so far been unable to have any meaningful communications with Defendant, since his Friday, June 5, 2020 arrest. COVID-19 has Mr. Althof Long in quarantine, for 23 hours a day. Mr. Althof Long's one (1) hour per day is used for showering. Mr. Yelsky continues his efforts to communicate with his client in this case, which to-date have been unsuccessful.

Even after Mr. Althof Long's 14-day quarantine, lawyers are not being allowed inside detention facilities, for in-person legal meetings. Video conferencing has proven ineffective to render meaningful legal counsel, as the video conferencing systems are unreliable. The fundamental Sixth Amendment right to counsel is significantly compromised by COVID-19, rendering meaningful legal counsel of clients in detention close to non-existent.

**III.     CONCLUSION**.

It is respectfully suggested that the foregoing facts (which will be further developed at the Detention Hearing) and above cited legal authorities weigh heavy in favor of this Honorable Court granting Brandon Michael Althof Long a bond with conditions.

          Respectfully submitted,

          /s/ - Mitchell J. Yelsky
          **YELSKY & LONARDO, LLC**
          **BY: MITCHELL J. YELSKY**
          Ohio Reg. No.: 0039295
          450 Lakeside Place
          323 Lakeside Avenue, West
          Cleveland, Ohio 44113
          (216) 781-2550 – Telephone
          (216) 781-6688 – Facsimile
          MJY@yelskylonardo.com – Email

          Counsel for **Defendant Brandon Michael Althof Long**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 8th day of June, 2020, a copy of the following was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's e-filing system.

          /s/ - Mitchell J. Yelsky
          **MITCHELL J. YELSKY, ESQ.**