IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NOs: 1:20-MJ-2119 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | GOVERNMENT'S MOTION TO |
| | ) | REVOKE AND/OR STAY THE ORDER |
| DEVON BRYCE POLAND, | ) | OF THE ARRESTING DISTRICT |
| | ) | MAGISTRATE JUDGE GRANTING THE |
| Defendant. | ) | DEFENDANT CONDITIONS OF |
| | ) | RELEASE |

The United States of America, by and through its attorneys, Justin E. Herdman, United States Attorneys, and Duncan T. Brown, Assistant United States Attorney, hereby respectfully moves this court, which has original jurisdiction over the offense, to revoke and/or stay the order of Magistrate Judge Richard A. Lanzillo, Magistrate Judge, Western District of Pennsylvania (WDPA, Case No. 20-59), granting DEVON BRYCE POLAND conditions of release pending trial on the charges in this district. POLAND and co-defendant BRANDON MICHAEL ALTHOF LONG traveled from Erie, Pennsylvania to downtown Cleveland, Ohio on the night of May 30, 2020 after curfew was imposed to engage in, promote, organize, and encourage riots and civil unrest. With a firearm and two loaded magazines, two bottles of gel fire starter, a can of spray paint, and a hammer, they traveled across stateliness *after* curfew was imposed, to join in the rioting that had earlier muted the voices of peaceful protest in the city of Cleveland.

1

**Factual Background**

The facts of this case are more fully set forth in criminal complaint and detention memorandum, attached hereto as Attachments A and B, respectfully, and incorporated herein by reference.

On or about May 30, 2020, there was a peaceful protest march planned in Cleveland, Ohio, in the Northern District of Ohio, starting at Willard Park, on the northwest corner of Lakeside Avenue and East 9th Street, and ending at the Justice Center, located on Lakeside Avenue between Ontario Avenue and West 3rd Street. The march began at approximately 2:00 p.m. and was scheduled to end at approximately 5:00 p.m.

At approximately 3:30 p.m., certain individuals in front of the Justice Center began throwing rocks, bottles, and other items at law enforcement officers. Some individuals used spray paint to vandalize buildings, streets, and other structures with anti-police and anti-government slogans.

At approximately 3:50 p.m., members of the Cuyahoga County Sherriff's Office began using non-lethal techniques to disperse the crowds in front of the Justice Center. Certain individuals continued to throw items at the police and vandalize structures. At least three Cleveland Police Department zone cars were set on fire by individuals in the crowd.

From approximately 4:00 p.m. until approximately 9:45 p.m., certain demonstrators continued to break windows of the Justice Center and surrounding buildings, knock over garbage cans and conduct other acts of vandalism. An additional four city-owned cars were set on fire during this time. The Cleveland Police Department and the City of Cleveland issued orders via

megaphone, Twitter, social media, and contact with news outlets for all demonstrators to disperse.

At approximately 7:30 p.m., the Cleveland Police Department and the City of Cleveland issued a curfew to begin at 8:00 p.m. and remain in effect until 12:00 p.m. on May 31, 2020. At approximately 7:30 p.m., the Cleveland Police Department and the City of Cleveland issued an order establishing a civil order prohibiting any persons from being on the streets or in a vehicle in downtown Cleveland.

At approximately 8:00 pm Poland and Long departed Erie, Pennsylvania for Cleveland, Ohio; departing *after* the curfew began. The two defendants had in their possession a firearm with ammunition, gel fire starter, spray paint, and a hammer. They arrived in downtown Cleveland approximately two hours after the curfew began and, based on their own texts, arrived with the intent to loot, riot and cause damage. Indeed, as they proclaimed to people on social media, they traveled to Cleveland, Ohio, not to support or engage in peaceful protest and marches, but to mute those voices with fire, riot and mayhem.

At approximately 11:55 p.m., Detective Habeeb and Commander Connelly of the Cleveland Police Department were on patrol enforcing the curfew when they observed a dark SUV parked on East 8th Street midway up the alley facing south, which is opposite the posted direction of travel for the one-way road. Det. Habeeb and Cmdr. Connelly observed Long wearing a commercial style filter mask walking out of the alley from near the SUV and north bound towards Det. Habeeb and Cmdr. Connelly's position onto Huron Road west bound. Det. Habeeb and Cmdr. Connelly observed Long walk in a circular route on the sidewalk and then

back towards the alley. Long walked around Det. Habeeb and Cmdr. Connelly's vehicle and appeared to be observing Det. Habeeb and Cmdr. Connelly.

As stated in the complaint, defendants Poland and Althof Long were placed under arrest for curfew violations. A list of items recovered from the defendants is included in the complaint, attached hereto, and it should be noted that no items typically used during a peaceful protest – protest signs, bottles of water or hydrating drinks, snacks, among other things, were recovered from the defendants. A federal magistrate judge in the Northern District of Ohio authorized a search warrant for Poland's cellular telephone, which contained text messages written by Poland on May 30, 2020, from both Facebook Messenger and Snapchat.

On June 10, 2020 a Grand Jury seated in the Northern District of Ohio voted a four count indictment against Poland and Althof Long charging them with Conspiracy, in violation of 18 U.S.C. § 371; Conspiracy to Use Fire to Commit a Felony, in violation of 18 U.S.C. § 844(h)(1) and (m); Rioting, in violation of 18 U.S.C. § 2101(a); and Civil Unrest, in violation of 18 U.S.C. § 231(a).

## Law and Argument

The United States moves to detain both Defendants pursuant to 18 U.S.C. § 3142, although this motion pertains only to Poland. Even absent the presumption for detention, which is not present in this case, Defendants poses a significant risk of flight and danger to the community. The defendants traveled across state lines with items to use during a riot, expressed his intent to engage in acts of rioting and civil unrest, and have no other ties to the District. All of the factors laid out in 18 U.S.C. § 3142(g) speak in favor of detention. This Court should therefore stay Defendant's release order and/or order Defendant's detention. The matter can be

fully addressed upon Defendant's transfer to the Northern District of Ohio for further proceedings.

A.   **Authority to Review Release Order**

The Bail Reform Act dictates both the procedures for detention and the factors that courts should consider when evaluating a motion for bond or detention. While a defendant may choose to challenge a detention motion in his district of arrest, the Act makes clear that the prosecuting district makes the final determination. 18 U.S.C. § 3145(a).[1] *United States v. Torres*, 86 F.3d 1029, 1031 (11th Cir. 1996) ("the plain language of section 3145 dictates that the district court with original jurisdiction over the offense, i.e., the prosecuting district, here the Southern District of Texas, is the only proper one to review the [bail] order in question"); *United States v. Evans*, 62 F.3d 1233, 1235 (9th Cir. 1995) (authority to review magistrate judge's detention order resides with the district court where the prosecution is pending).

Any order of release on bond in the arresting district is subject to an immediate stay pending an appeal in the prosecuting district, where defendant would be transported in custody. *Torres*, 86 F.3d at 1031. Congress did not give authority to the courts in the arresting district to "dissolve the stay" of any bail order, as "a district judge in the district of arrest may not effectuate the defendant's release on bail and deprive the district of prosecution of the power to hear a revocation motion." *United States v. Velasco*, 879 F. Supp. 377, 378 (S.D.N.Y. 1995);

---

[1] 18 U.S.C. § 3145(a) provides:

> (a) Review of a Release Order.—If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court—
>
> (1) the attorney for the Government may file, with the court having *original jurisdiction over the offense*, a motion for revocation of the order or amendment of the conditions of release.

18 U.S.C. § 3145 (emphasis added).

*Torres*, 86 F.3d at 1031 (noting that, under 18 U.S.C. § 3145, the arresting district lacks jurisdiction to challenge any stay order from the prosecuting district). The same is true for charges based upon a complaint. *See United States v. Echeverri*, 1994 U.S. Dist. LEXIS 1541 (S.D.N.Y. 1994) (finding that jurisdiction for appeal of bail order for charges based on a complaint "appropriately resides in this court [in the prosecuting district] on this appeal since under 18 U.S.C. § 3145(a)(1) this is the court having original jurisdiction").

### B.     Defendant Poses a Risk of Flight

The government avers that the analysis for risk of flight should be performed from the perspective of the locus of the crime and the prosecuting jurisdiction, the Northern District of Ohio. Poland does not reside in the Northern District of Ohio. Poland is not employed in the Northern District of Ohio. Poland has no family, social or community ties to the Northern District of Ohio. The only ties Poland has to the Northern District of Ohio are those he created when he traveled to Cleveland, Ohio, two hours after the curfew started, to engage in acts in furtherance of riot, civil unrest, and the use of fire to commit felonies.

The defendant will be expected to appear in court in the Northern District of Ohio, but the Pre-Trial Report is silent to how that travel will be accomplished. While he has a mother who lives approximately 16 miles away from Erie, Pennsylvania, there is no indication she, acting as a third-party custodian, or his live-in girlfriend, is willing or able to ensure his presence in the Northern District of Ohio. At a detention hearing conducted in Erie, Pennsylvania, on June 10, 2020, counsel for Poland proffered that the 20 year old girlfriend, who is employed as a certified nursing assistant could drive him to Cleveland as needed, but the government argues this is not sufficient. Relying on his girlfriend to secure his presence does not augur well for compliance, on the day of his arrest, his live-in girlfriend attempted to shove officers with the

6

Erie Police Department and prevent them from making a lawful arrest of Poland. Moreover, neither the mother or girlfriend has a landline through which to provide monitoring capabilities for Pre-Trial Services. Thus, even if a solution involving electronic monitoring was proposed, the government suggests that would create an unnecessary burden on two separate Pre-Trial Services offices.

This Court should therefore detain Defendants.

**C.      Defendant is a Danger to the Community**

The defendant chose to travel to a city he did not live in to riot, loot, and engage in acts of civil unrest. Poland did not arrive in Cleveland accidentally, he did not go to Cleveland in the heat of the moment, he was not overcome with rage or indignation over recent events. Poland searched out locations outside of his hometown of Erie, Pennsylvania, where riots were escalating, Poland made sure he had supplies to use during the riots, and tried to bring people with whom to riot. He had a car ride of over 100 miles from Erie, Pennsylvania, to Cleveland, Ohio, -- almost two hours -- to think about his potential actions. When he arrived in Cleveland, Poland put his plan to loot in action and stole a bottle of alcohol from a bar. As the timeline of his own texts show, he had one intent in travelling to Cleveland, Ohio, an intent to riot and do damage to the stores and community of Cleveland, Ohio. The following text messages were recovered from Poland's phone and provide a timeline of his intentions and actions on May 30, 2020.

- At approximately 5:17 p.m., using Facebook Messenger, ALTHOF LONG messaged POLAND asking, "Wanna go to Pittsburgh and watch the riots."
- At approximately 5:19 p.m., using Facebook Messenger, POLAND replied, "Is there actually riots? IK (I know) philly is wilding."

7

- At approximately 5:20 p.m., using Facebook Messenger, ALTHOF LONG messaged POLAND, "They lit it on fire lmao (laugh my a\*\* off)."

- At approximately 5:24 p.m., using Facebook Messenger, POLAND responded, "I wanna s\*\*t kinda but my future wife needs me."

- At approximately 5:25 p.m., using Facebook Messenger, ALTHOF LONG responded, "This is a once in a life time thing you can witness and maybe participate in."

- At approximately 5:25 p.m., using Facebook Messenger, ALTHOF LONG messaged POLAND, "Or tell her you gotta go overthrow the govt first."

- At approximately 5:42 p.m., using Snapchat, POLAND messaged INDIVIDUAL 12 about attending protests stating, "I'm gonna go set s\*\*t on fire."

- At approximately 6:10 p.m., using Facebook Messenger, ALTHOF LONG messaged POLAND, "Unless things change. Cleveland seems like a better spot to riot watch."

- At approximately 6:11 p.m., using Facebook Messenger, ALTHOF LONG messaged POLAND, "Police shooting teargas and flash bangs, Pittsburgh hasn't had much of that."

- At approximately 7:09 p.m., using Facebook Messenger, ALTHOF LONG messaged POLAND about buying supplies for their travel to Cleveland and asked if POLAND wanted goggles. POLAND replied, using Facebook Messenger, "Yes," and also asked for "a bandana" and a "backpack."

---

2 Recipients of text messages who did not travel with Poland from Pennsylvania to Ohio to riot are identified as "Individual #" to protect their identity.

- At approximately 7:10 p.m., using Facebook Messenger, POLAND messaged ALTHOF LONG asking, "Should we bring Molotov supplies?"

- At approximately 7:11 p.m., using Facebook Messenger, POLAND messaged INDIVIDUAL 2, asking, "Bruh you tryna go to Cleveland and riot?"

- At approximately 7:17 p.m., using Facebook Messenger, ALTHOF LONG responded, "Sadly enough I think I have everything needed for a Molotov in my car. Like normally."

- At approximately 7:18 p.m., using Facebook Messenger, POLAND messaged INDIVIDUAL 2 stating, "I'm gonna try bro. ALTHOF is really tryna go do this s**t."

- At approximately 7:20 p.m., using Facebook Messenger, POLAND messaged INDIVIDUAL 2 stating, "He's got Molotov cocktails and everything."

- At approximately 7:48 p.m., using Facebook Messenger, POLAND messaged INDIVIDUAL 2 stating, "Yeah they are locking the city [Pittsburgh] down. I'm finna loot Cleveland. You want some designer s**t?"

- At approximately 7:48 p.m., using Facebook Messenger, POLAND messaged ALTHOF LONG, stating, "Pittsburgh is s**t down."

- At approximately 7:49 p.m., using Facebook Messenger, POLAND messaged ALTHOF LONG, stating, "[t]he city is blocked shut bro."

- At approximately 7:50 p.m. and 7:56 p.m., using Facebook Messenger, ALTHOF LONG responded, "Cleveland is more lit anyway," and "[a]nd if not Pittsburgh then we can hit Cleveland OH."

- At approximately 8:02 p.m., using Facebook Messenger, ALTHOF LONG messaged POLAND that he was leaving to pick him up and at approximately 8:04 p.m. POLAND responded, using Facebook Messenger, by providing ALTHOF LONG the address in Erie, Pennsylvania, where ALTHOF LONG should go.

- At approximately 8:30 p.m., using Snapchat, POLAND messaged INDIVIDUAL 3 stating, "I'm going to Cleveland to riot."

- At approximately 8:30 p.m., using Snapchat, POLAND again messaged INDIVIDUAL 3 stating, "I'm gonna see if I can't break into a designer store."

- At approximately 11:57 p.m., using Snapchat, POLAND messaged INDIVIDUAL 4 stating, "My phone died but me and mass n****s busted into some bars. I got a whole a*s bottle of liquor."

In addition to the texts Poland sent demonstrating his intent to riot and cause civil unrest, once subject to questioning by police, Poland and Althof Long were evasive and dishonest. Det. Habeeb conducted a pat down of the Poland against the rear of the SUV and recovered a folding knife that had been clipped to the front pocket of Poland's hooded sweatshirt. Poland had no identification or wallet on his person. Det. Habeeb asked Poland where his identification was and Poland stated he didn't know. Det. Habeeb asked POLAND if there were any weapons in the vehicle to which POLAND stated there was a BB gun and a knife in the car. Inside the car, in addition to the BB gun, officers discovered a hammer, two containers of Sterno Fire Starter Gel, and a Glock firearm with two fully loaded magazines.

Simply, these charges stem from Poland traveling to a city and a community he was not part of - he went to Cleveland expressly to cause destruction and engage in rioting and looting. While the argument could be made that he no longer poses a threat because there are no more

10

riots to join or curfews to violate, such an argument is short-sighted and, frankly, crass. Rather, the danger Poland poses is from his willingness to spread mayhem and fear in a city which he does not reside. Instead of using empathy and compassion to let communities outside of his to deal with complex issues together, let alone try to engage with his own community in a meaningful or positive way, he saw the civic turmoil as an opportunity to travel to a community to engage in rioting and looting for his own personal thrill. Plainly, the danger is not just in Poland's actions or potential actions, but in his dismissive and wanton mindset and attitude towards society at large.

### D.     All of the 18 U.S.C. § 3142(g) Factors Speak in Favor of Detention

The factors Congress directed judicial officers to consider in determining whether to detain a defendant pending trial are set forth in 18 U.S.C. § 3142(g). They include the following: (1) "the nature and circumstances of the offense charged;" (2) "the weight of the evidence against the person;" and (3) "the history and characteristics of the person, including […] the nature and seriousness of the danger" defendant poses to any person or the community. 18 U.S.C. § 3142(g). These factors, even independent of the presumption, support the detention of these Defendants.

First, the nature and circumstances of the offense weigh heavily in favor of Defendant's detention. The Defendant traveled to Cleveland expressly to riot and cause damage. He came equipped, and traveled with a person who, admitted to having Molotov cocktail supplies as matter of course. There has never been an indication that the Defendant wanted to engage in peaceful activities, either by his words or his actions.

Second, the weight of the evidence is overwhelming. The United States has a strong case against Defendants and it only grows stronger as agents review the evidence. Federal agents

11

have reviewed the circumstances of his arrest, that he was in downtown Cleveland after curfew, that he was in possession of weapons, and that he had stolen liquor. Federal agents have reviewed the text messages expressing his intentions, the he intended to travel to Cleveland from Erie, Pennsylvania, that he wanted to have Molotov cocktails, that he intended to, and in fact did, loot. The case against the Defendant is strong because the Defendant's own words and actions squarely implicate him in the criminal conspiracy to riot and cause civil unrest.

This Court should therefore order Defendants' detention.

## CONCLUSION

For the foregoing reasons, the United States respectfully urges this Court to revoke and/or stay the order of release by the Magistrate Judge in the Western District of Pennsylvania and consider *de novo* the United States' motion for detention pending trial herein. A proposed order is attached.

    Respectfully submitted,

    JUSTIN E. HERDMAN
    UNITED STATES ATTORNEY

By:   /s/ Duncan T. Brown
    Duncan T. Brown (NY: 3982931)
    Assistant United States Attorney
    United States Court House
    801 West Superior Avenue, Suite 400
    Cleveland, OH 44113
    (216) 622-3933
    (216) 522-8355 (facsimile)
    Duncan.Brown@usdoj.gov

## CERTIFICATE OF SERVICE

    I hereby certify that on June 11, 2020, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by email. The Motion and Proposed Order was forwarded by overnight mail to Defendants' counsel.

                                                                     /s/Duncan T. Brown
                                                                   Duncan T. Brown
                                                                   Assistant U.S. Attorney